**Not for Publication**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| EDDIE MALDONADO, JR., *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> CITY OF PASSAIC BOARD OF EDUCATION, *et al.*, <br><br> Defendants. | Civil Action No. 17-12245 (ES) (JAD) <br><br> OPINION |

SALAS, DISTRICT JUDGE

Plaintiffs Eddie Maldonado, Jr. ("Maldonado") and Andrew Nazario ("Nazario") (collectively, "Plaintiffs") bring this action against defendants the City of Passaic Board of Education and Passaic Public Schools (collectively, the "Board"),[1] Pablo Munoz, Salim Patel, Peter T. Rosario, Maryann Capursi, Horacio Ray Carrera, Craig Miller, Ronald Van Rensalier, L. Daniel Rodriguez, Christina Schratz, Arthur G. Soto, Aida Garcia, and Hector Lora, individually and in their official capacities (collectively, "Defendants"), in connection with Plaintiffs' prior employment with the City of Passaic Board of Education and Passaic Public Schools. Before the Court is Defendants' motion to dismiss Plaintiffs' first amended complaint (D.E. No. 24 ("Amended Complaint" or "Am. Compl.")) pursuant to Federal Rule of Civil Procedure 12(b)(6). (D.E. No. 28). The Court has considered the parties' submissions and decides the motion without oral argument. *See* Fed. R. Civ. P. 78(b); *see also* L. R. 78.1(b). For the following reasons, the motion is GRANTED.

---

[1] The Amended Complaint and the parties treat the "City of Passaic Board of Education" and "Passaic Public Schools" as the same entity. (*See* Am. Compl. ¶¶ 1& 3; D.E. No. 28-2 at 18).

# I.     Background

## A.     Plaintiffs' Employment

Plaintiffs are former employees of the Passaic Board of Education and Passaic Public Schools.  (*See* Am. Compl. ¶ 9).  Maldonado was employed in June 2011 as a Coordinator of Facilities, and Nazario began employment in January 2015 as a Custodial Manager.  (*Id.*).  Plaintiffs were appointed for a one-year term and received yearly employment evaluations, which contained recommendations for their reappointment.  (*See id.* ¶ 10).  On May 4, 2017, Plaintiffs were recommended for reappointment.  (*Id.* ¶ 11).  However, on May 12, 2017, defendant Pablo Munoz ("Munoz") allegedly informed Plaintiffs by letter that they were placed on administrative leave until June 30, 2017.[2]  (*Id.* ¶ 12).  By a separate letter also dated May 12, 2017, Munoz indicated that Plaintiffs' employment contracts would not be renewed.  (*Id.* ¶ 13).  Subsequently, the Director of Human Resources for Passaic Public Schools listed purported reasons for Plaintiffs' non-renewal of employment in letters to Plaintiffs dated June 13, 2017.  (*Id.* ¶ 25).  Thereafter, on July 13, 2017, the Board held a hearing pursuant to *Donaldson v. North Wildwood Board of Education.*, 65 N.J. 236 (1974), where it declined to take further action with respect to the non-renewal of Plaintiffs' employment contracts.[3]  (*Id.* ¶¶ 26–27).  Plaintiffs were informed of the Board's decision by letters dated July 14, 2017. [4]

---

[2]      Although not explicit, the Court assumes each plaintiff received separate letters from Munoz.

[3]      *Donaldson* hearings provide school employees an opportunity to be heard on decisions regarding their employment before the school's Board of Education.  *See Donaldson*, 65 N.J. 236.

[4]      Specifically, the Amended Complaint purports to quote language contained within the July 14, 2017 letters, but does not provide a proper citation, nor does it attach the letters.  (*See id.* ¶ 27 ("'the Board decided that it would not take any further action with respect to [Plaintiffs'] non-renewal.'")).

### B. 2017 Passaic Mayoral Election

Prior to their non-renewal of employment and during the 2017 mayoral campaign in the City of Passaic, Plaintiffs allegedly displayed outward support for Richard Diaz ("Diaz"), the chief rival of defendant Hector Lora ("Lora"). (*Id.* ¶ 16). Lora was elected mayor on May 9, 2017, five days after Plaintiffs were recommended for reappointment and three days before Plaintiffs received letters regarding their non-renewal. (*Id.* ¶¶ 11–15).

Specifically, Plaintiffs claim that they outwardly demonstrated their support for Diaz when they attended the event where Diaz announced his candidacy for mayor and took separate photographs with Diaz that were then posted on social media. (*Id.* ¶¶ 17–18). Plaintiff Nazario allegedly supported Diaz by attending Diaz's political events and posting Diaz signs on his various properties, including his personal residence and at 95 Grant Street in Passaic, New Jersey. (*Id.* ¶ 18). Nazario also removed a sign in support of Lora at his property on Grand Street, which was allegedly screwed into the property's vinyl siding by a tenant. (*Id.*). Subsequently, Lora allegedly approached Nazario, and firmly shook Nazario's hand stating: "'I've been meaning to speak with you. I have a [church] sister that I love very, very, very much and she resides in your building on Grant Street. I hope we can resolve this. I don't forget.'" (*Id.*). Separately, plaintiff Maldonado claims that during the campaign his sister was engaged to Diaz' "right hand," who is now Maldonado's brother-in-law. (*Id.* ¶ 17). Moreover, Maldonado posted visible pieces of "political literature" supporting Diaz on the dashboard of his car. (*Id.*).

During the mayoral campaign on January 19, 2017, Maldonado and Nazario allegedly met with defendant Aida Garcia ("Garcia"), Chief of Operations at the Board, and other school officials not named as defendants in the Amended Complaint, who advised Plaintiffs regarding solicitation and campaign policies on school grounds. (*Id.* ¶ 20). Maldonado made it apparent that he and

Nazario supported Diaz and voiced that he heard rumors regarding future adverse treatment towards Plaintiffs if Diaz lost the election. (*Id.*). The rumors were apparently denied. (*Id.*). On March 9, 2017, Maldonado met with a city Councilwoman who also acted as Director of Human Resources regarding his encounter with Garcia; Maldonado was informed that things would return to normal after the mayoral election. (*Id.* ¶ 21). Finally, Plaintiffs allege that they were given tasks at unreasonable hours as well as unrealistic deadlines, which they attribute to their support for Diaz. (*See id.* ¶ 22).

### C.    Procedural History

On November 30, 2017, Plaintiffs filed the initial complaint against the Defendants relating to their non-renewal of employment. (*See generally* D.E. No. 1). The Court heard oral argument on Defendants' motion to dismiss on January 9, 2019, where it dismissed, *without prejudice*, Plaintiffs' claims under 42 U.S.C. §§ 1983 and 1988 ("Section 1983" and "Section 1988") for alleged violations of the First and Fourteenth Amendments of the U.S. Constitution, and under the New Jersey Civil Rights Act for alleged violations of the New Jersey Constitution. (D.E. No. 19). At the hearing, Plaintiffs also withdrew their Section 1983 and Section 1988 claims premised on the Fourth, Fifth, and Sixth Amendments of the Constitution, as well as their claims against the Board to the extent they were based on the theory of respondeat superior. (*Id.*). With regard to Plaintiffs' claims based on the First Amendment and its counterpart under the New Jersey Constitution, which were the only viable claims that remained, the Court engaged Plaintiffs in a robust discussion on deficiencies in the pleading, specifically their failure to allege: (i) how each individual defendant was connected to the alleged retaliation that resulted in Plaintiffs' non-renewal of employment; and (ii) how each defendant had knowledge of Plaintiffs' support for Diaz's mayoral ticket. (*See* D.E. No. 23 ("Hearing Tr.") at 39:6–11 & 42:6–19).

Plaintiffs subsequently filed the Amended Complaint on March 11, 2019, seeking damages for alleged violations of the First Amendment to the U.S. Constitution and its counterpart under the New Jersey Civil Rights Act. (*See generally* Am. Compl. ¶¶ 31–42).

## II.     Legal Standard

### A.     Failure to State a Claim

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

In assessing a Federal Rule of Civil Procedure 12(b)(6) motion, "all allegations in the complaint must be accepted as true, and the plaintiff must be given the benefit of every favorable inference to be drawn therefrom." *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011) (quoting *Kulwicki v. Dawson*, 969 F.2d 1454, 1462 (3d Cir.1992)). But a reviewing court does not accept as true the complaint's legal conclusions. *See Iqbal*, 556 U.S. at 678 ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.").

"[A] court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010); *see also Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006) ("In evaluating a motion to dismiss, we may consider documents that are attached to or submitted with the complaint, and any matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, and items appearing in the record of the case.") (citations and internal quotation marks omitted).

**III.    Discussion**

**A.    Section 1983 Retaliation Claim**

Defendants argue that the Amended Complaint fails to plead how each individual defendant engaged in wrongful conduct underlying the alleged unconstitutional retaliation. (*See* D.E. No. 28-2 at 8–17). Additionally, Defendants contend that Plaintiffs fail to allege: (i) knowledge of Plaintiffs' support for Diaz by any defendant Board member as well as by defendant Munoz; and (ii) knowledge of plaintiff Maldonado's support for Diaz by defendant Lora. (*Id.* at 11 & 14–15). The Court agrees with Defendants on both grounds.

Pursuant to 42 U.S.C. § 1983:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured . . . .

42 U.S.C. § 1983. Thus, to state a claim for relief under Section 1983, a plaintiff must allege, first, the violation of a right secured by the Constitution or laws of the United States, and second, that the alleged deprivation was "committed by a person acting under color of state law." *See Harvey v. Plains Twp. Police Dep't*, 635 F.3d 606, 609 (3d Cir. 2011) (internal quotations omitted); *see also West v. Atkins*, 487 U.S. 42, 48 (1988).

To establish a Section 1983 claim for retaliation based on activity protected under the First Amendment, a plaintiff must allege: (i) "constitutionally protected conduct;" (ii) "retaliatory action sufficient to deter a person of ordinary firmness from exercising his constitutional rights;" and (iii) "a casual link between the constitutionally protected conduct and the retaliatory action." *Thomas v. Independence Twp.*, 463 F.3d 285, 296 (3d Cir. 2006). To sufficiently plead causation, a plaintiff must plead that the protected conduct was a "substantial or motivating factor" for the alleged

retaliation. *Conard v. Pa. State Police*, 902 F.3d 178, 184 (3d Cir. 2018) (quoting *Watson v. Rozum*, 834 F.3d 417, 422 (3d Cir. 2016)). "While 'unusually suggestive' timing can provide evidence of causation, causation also can be shown 'from the evidence gleaned from the record as a whole.'" *Id.* (quoting *Watson*, 834 F.3d at 424).

Moreover, "[w]hen there is more than one defendant" named in an action involving a Section 1983 First Amendment retaliation claim, "the employee must show that each defendant individually participated or acquiesced in each of the alleged constitutional violations." *Smith v. Cent. Dauphin Sch. Dist.*, 355 F. App'x 658, 667 (3d Cir. 2009) (citing *C.N. v. Ridgewood Bd. of Educ.*, 430 F.3d 159, 173 (3d Cir. 2005)); *Church of Universal Love & Music v. Fayette Cty.*, No. 10-1422, 2011 WL 1463638, at *4 (W.D. Pa. Apr. 15, 2011) ("A defendant in a Section 1983 action must have personal involvement in the alleged violations."). A plaintiff can successfully plead a defendant's individual liability under Section 1983 by alleging "participation or actual knowledge and acquiescence" in the retaliatory action. *Rode v. Dellarciprete*, 845 F.2d 1195, 1207–08 (3d Cir. 1988) (holding that plaintiff failed to show that the defendant had "the necessary personal knowledge to sustain the civil rights action as to him" based in part on information published in numerous newspaper publications). But these allegations must be pled with "appropriate particularity." *Id.*; *Mincy v. Chmielsewski*, 508 F. App'x 99, 104 (3d Cir. 2013) (finding that an alleged conversation between plaintiff and defendant regarding missing property was "insufficient to establish personal involvement or actual knowledge").

### i. Board Members

Plaintiffs named the following members of the Board as individual defendants in the Amended Complaint: Salim Patel, Peter T. Rosario, Maryann Capursi, Horacio R. Carrera, Craig Miller, Ronald Van Rensalier, L. Daniel Rodriguez, Christina Schratz, and Arthur G. Soto. (Am.

Compl. ¶ 5).[5]  Plaintiffs fail to allege how each individual Board member was personally involved in the Plaintiff's non-renewal of employment and knew of Plaintiffs' support for Diaz.

During oral argument held on January 9, 2019, the Court discussed the original complaint with Plaintiffs' counsel in painstaking detail and pointed out its deficiencies claim-by-claim.  (*See generally* Hearing Tr.).  With regard to Plaintiffs' First Amendment claims, the Court noted that the original complaint fell short of establishing each defendant's role in the alleged retaliation and causation between Plaintiffs' constitutionally protected activities and the allegedly retaliatory act.  (*See id.* at 39:6–11 & 42:6–19).  By way of example, to cure the deficiencies identified during oral argument, Plaintiffs should have alleged "that each individual defendant was involved in the [employment] determination" and that Plaintiffs' support for Diaz was "open and notorious" such that all individual defendants "had knowledge of [Plaintiffs'] outward support of Diaz."  (*Id.* at 42:6–19).  Moreover, the Court warned that if Plaintiffs failed to cure their pleading deficiencies, the Amended Complaint would be dismissed with prejudice.  (*Id.* at 21:6–8 ("[I]f counsel doesn't do what he needs to do based on our discussions here today, [Defendants'] motion will likely be granted with prejudice.")).  None of these deficiencies were cured in the Amended Complaint.

Instead, the Amended Complaint contains allegations concerning the collective non-action of the Board.  Specifically, Plaintiffs allege that:  (i) the Board conducted a *Donaldson* hearing on July 13, 2017; (ii) the Board decided to take no further action regarding Plaintiffs' non-renewal; and (iii) the Board's decision to refrain from taking action was "obvious[ly] made and carried out by its individual members and Defendants."  (Am. Compl. ¶¶ 26–28).  Significantly, rather than allege that the Board actively voted on Plaintiffs' employment renewal, the Amended Complaint merely claims that the Board collectively decided to take no further action.  (*See* Am. Compl. ¶¶

---

[5]      The Court notes that there are duplicative paragraphs numbered one through six in the Amended Complaint. The citation to paragraph five is on page three of the Amended Complaint.

26–27).  Indeed, Plaintiffs do not allege that the Board members voted to either accept or reject the non-renewal decision or the purported reasons for the decision as set forth in the letters to Plaintiffs dated June 13, 2017.  (*See generally id.*).

With respect to Board members Carrera, Rosario, Rodriguez, Soto, and Schratz, Plaintiffs allege "it is fact that" these defendants aligned themselves with Lora's ticket for mayor during the 2017 "school board election."  (*Id.* ¶ 29).  Plaintiffs also seemingly allege that subsequent positions held by Board members Rosario, Patel and Van Rensalier support the contention that these defendants were aligned with Lora during the 2017 election period.  (*See id.*).  Specifically, after assuming the position of mayor, defendant Lora allegedly appointed Rosario to the City of Passaic Planning Board and recommended Patel to fill a vacant city council seat.  (*Id.*).  Meanwhile, Plaintiffs claim that Van Rensalier and Lora are allegedly members of the Board of Trustees on the City of Passaic Urban Enterprise Zone, and that Van Rensalier also acts as Chairman of the Housing Authority of the City of Passaic as well as the Director of Community of Development.[6] (*Id.*).

First, even if "it is fact that" certain Board members aligned with Lora during any election and were appointed or recommended by Mayor Lora for certain public positions, these allegations have no bearing on whether the Board members had any role in Plaintiffs' non-renewal.  Second, the Amended Complaint completely fails to allege any fact with respect to defendants Capursi or Miller beyond their membership on the Board.  (*See generally id.*).  Accordingly, the Amended Complaint fails to specify how each defendant Board member acted to personally advance the Plaintiffs' non-renewal of employment.  *See, e.g.*, *Church of Universal Love & Music*, 2011 WL

---

[6]     While the alleged positions of each individual defendant Board member reflect the status as stated in the Amended Complaint, the Court notes that changes in office may have occurred prior to its decision.

1463638, at *4 (noting that "[t]he [c]omplaint suggests [defendant's] involvement . . . but does not sufficiently specify her role").

Additionally, the Plaintiffs do not plead how each defendant Board member had any actual or personal knowledge of Plaintiffs' support for Diaz. Here, the Amended Complaint alleges that Maldonado outwardly displayed his support for Diaz by posting visible political literature on his car's dashboard. (Am. Compl. ¶ 17). Nazario claims to have posted a sign in support of Diaz on many of his properties, including his personal residence. (*Id.* ¶ 18). Nazario also allegedly attended many political events for Diaz. (*Id.*). Finally, both Maldonado and Nazario attended an event where Diaz announced his candidacy, and pictures featuring each Plaintiff with Diaz surfaced on social media. (*Id.* ¶¶ 17–18).

Although Plaintiffs claim that they outwardly supported Diaz for mayor, the Amended Complaint is deficient because it fails to indicate whether the individual defendant Board members personally saw any photographs of Plaintiffs with Diaz or whether they attended any of the same political events where Plaintiffs claimed to have showed their support for Diaz. *See e.g.*, *Rode*, 845 F.2d at 1207–08. Moreover, there is no allegation that the Board members personally saw literature or signs posted by Plaintiffs, or whether they actually knew that Maldonado's car or Nazario's properties displaying such literature belonged to each respective Plaintiff. (*See* Hearing Tr. at 39:13–18 (noting that Plaintiffs could cure deficiencies regarding the Board members' individual knowledge by pleading, for example, that "everybody in town understood that it was [Nazario's] building and knew that it was [Nazario's] building" which displayed Diaz signs)). Contrary to the Court's detailed discussion with the parties during oral argument, Plaintiffs failed to plead a causal connection between their support for Diaz and their employment non-renewal with respect to each individual Board member because the Amended Complaint contains no

allegations that any Board member had actual or personal knowledge of Plaintiffs' political affiliations. (*See id.* at 39:6–11 (stating that in an amended pleading the Court "need[s[] to understand how . . . every single board member . . . in this complaint had knowledge that Maldonado and Nazario were clearly team Diaz.")). Nor does the Amended Complaint contain any plausible inference that the individual Board members could have had such knowledge. (*See generally* Am. Compl.). Accordingly, Plaintiffs' Section 1983 claim against all Board members is dismissed.

### ii.     Pablo Munoz

Plaintiffs do not allege how defendant Munoz, in his capacity as Superintendent, participated or acquiesced in deciding Plaintiffs' non-renewal, nor do they allege how defendant Munoz personally knew of Plaintiffs' support for Diaz. With respect to defendant Munoz, the Amended Complaint contains two allegations. First, Munoz apparently advised Plaintiffs that they were on administrative leave by letter dated May 12, 2017. (*Id.* ¶ 12). Second, by an additional letter also dated May 12, 2017, Munoz advised Plaintiffs that their employment contracts would not be renewed. (*Id.* ¶ 13). Even in a light most favorable to the Plaintiffs, the allegations regarding Munoz are entirely deficient. The Amended Complaint contains no allegation, nor does it provide any plausible inference, that Munoz had any part in the evaluation or decision-making processes with respect to Plaintiffs' employment. *See Smith*, 355 F. App'x at 667. Similarly, there is no allegation or plausible inference that Munoz had any actual knowledge of Plaintiffs' political support for Diaz: the allegations do not credit Munoz with knowledge of Plaintiffs' photographs with Diaz, postings of literature or signage in support of Diaz, or Plaintiffs' attendance at political events in support of Diaz. (*See generally* Am. Compl.). Additionally, Plaintiffs do not plead, nor does this Court infer, that Munoz was informed about their alignment with Diaz by other

individuals. (*See generally id.*). The Court specifically pointed out many of these deficiencies during the July 9, 2019 hearing. (Hearing Tr. at 39: 6–11, 13–18 & 45:19–23). Because these deficiencies remain uncured, Plaintiffs' Section 1983 claim against Munoz is dismissed.

### iii. Aida Garcia

Garcia's role in Plaintiff's non-renewal is inadequately pled to substantiate a claim for retaliation under Section 1983. Significantly, Plaintiffs fail to allege that Garcia, in her capacity as Chief of Operations, acted to further Plaintiffs' non-renewal. (*See generally* Am. Compl.). The Amended Complaint merely alleges that Garcia and Plaintiffs met on January 19, 2017, and that Garcia, along with other officials, advised Plaintiffs of political solicitation and campaign policies on school grounds. (*See id.* ¶ 20). Thus, even if Plaintiff Maldonado clearly informed Garcia that both he and Plaintiff Nazario supported Diaz prior to their non-renewal (*see id.*), the alleged facts are silent regarding Garcia's participation or acquiescence in any decision regarding Plaintiffs' employment status. *See Rode*, 845 F.2d at 1207–08. As such, Plaintiffs' Section 1983 claim against Garcia is dismissed.

### iv. Hector Lora

Similarly, the Amended Complaint fails to plead how defendant Lora individually participated or acquiesced in deciding Plaintiffs' non-renewal. (*See generally* Am. Compl.). Plaintiffs' allegation that the Board members supported Lora's ticket for mayor does not establish any involvement by Lora with respect to Plaintiffs' employment status. (*See id.* ¶ 29). Subsequent appointments by Lora after he assumed the position of mayor also fail to indicate how Lora was involved in Plaintiffs' non-renewal. (*See id.*). Moreover, even if Lora knew that Nazario openly supported Diaz (*see id.* ¶ 20), the Amended Complaint does not reflect that Lora knew, in the first instance, that Nazario and Maldonado were employed by the Passaic Board of Education and

Passaic Public Schools. (*See generally id.*). Moreover, Plaintiffs do not plead that Lora knew Maldonado at all, let alone that he had knowledge of Maldonado's support of Diaz. (*See generally id.*; *see also* Hearing Tr. at 39:6–11). Lastly, the Court cannot infer that Lora directed or had any involvement in Plaintiffs' non-renewal based solely on the alleged confrontation between Lora and Nazario. *See Mincy*, 508 F. App'x at 104. Because the Amended Complaint fails to allege that Lora was somehow personally involved in or orchestrated Plaintiffs' non-renewal, and because it similarly does not allege how Lora had personal knowledge of Maldonado's support for Diaz, the Plaintiffs' Section 1983 claim against Lora is dismissed.

In summary, despite the Court's discussion of these deficiencies at length during oral argument (*see* Hearing Tr. at 39:6–11 & 42:6–19), Plaintiffs' Amended Complaint (i) fails to allege how each individual defendant partook in the alleged retaliation, and (ii) fails to establish how the individual defendants, except Lora and Garcia, had knowledge of the Plaintiffs' outward support for Diaz's mayoral campaign.[7]

---

[7] When viewed in a light most favorable to the Plaintiffs, the pleadings support the notion that Lora had knowledge of Nazario's support for Diaz, while Garcia knew that both Plaintiffs supported Diaz. Nonetheless, Plaintiffs' claim against Lora and Garcia remains deficient because the Amended Complaint does not plead any plausible inference of Lora or Garcia's involvement in Plaintiffs' non-renewal. (*See generally* Am. Compl.).

Further, the Court acknowledges the temporal proximity of events surrounding Plaintiffs' employment nonrenewal. Plaintiffs were advised that their employment contracts would not be renewed merely three days after the mayoral election and eight days after receiving recommendations for reappointment based on Plaintiffs' yearly employment evaluations. (Am. Compl. ¶¶ 11–14). Although not the basis for the Court's decision, the Court notes that Plaintiffs were on notice of Defendants' position that evaluations typically occurred around the time of the election each year. (*See* Hearing Tr. 32:24–33:1). Yet, the Amended Complaint does not allege that the 2017 evaluation and recommendation for reappointment occurred during a time that was different from prior years, nor does it provide any facts that would give rise to the inference that the timing of the 2017 evaluation was irregular when compared to prior years. (*See generally* Am. Compl.). To the contrary, the Amended Complaint simply alleges that the employment evaluations occurred annually (*Id.* ¶ 10), which can only give rise to the reasonable inference that they occur around the same time each year. For the reasons discussed above, "the record as a whole" reflects that Plaintiffs' Section 1983 claim must fail because they do not allege how any individual defendant was involved in their employment non-renewal and neglect to allege how the individual defendants, other than Lora and Garcia, had knowledge of Plaintiffs' political affiliations. *See Watson*, 834 F.3d at 424.

Accordingly, Count I is dismissed *with prejudice* against defendants Patel, Rosario, Capursi, Carrera, Miller, Van Rensalier, Rodriguez, Schratz, Soto, Munoz, Garcia, and Lora. (*See* Hearing Tr. at 21:6–8).

### B. *Monell* Liability

Plaintiffs' Section 1983 claim against the Board must also be dismissed because the Amended Complaint fails to allege facts to state a plausible claim under *Monell v. Department of Social Services*, 436 U.S. 658 (1978). "When a suit against a municipality is based on § 1983, the municipality can only be liable when the alleged constitutional transgression implements or executes a policy, regulation or decision officially adopted by the governing body or informally adopted by custom." *Mulholland v. Gov't Cnty. of Berks*, 706 F.3d 227, 237 (3d Cir. 2013) (quoting *Beck v. City of Pittsburgh*, 89 F.3d 966, 971 (3d Cir. 1996)). In other words, "a local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents," *Monell*, 436 U.S. at 694, but "it can be held responsible as an entity when the injury inflicted is permitted under its adopted policy or custom." *Beck*, 89 F.3d at 971.

To establish municipal liability, a plaintiff must: (i) demonstrate the existence of an unlawful policy or custom; (ii) that resulted in a deprivation of the rights, privileges, or immunities secured by the Constitution or laws of the United States; and (iii) that the policy or custom was the proximate cause of the alleged deprivation. *Bielevicz v. Dubinon*, 915 F.2d 845, 850 (3d Cir. 1990). The Third Circuit has identified three general types of *Monell* claims where (i) "the appropriate officer or entity promulgates a generally applicable statement of policy and the subsequent act complained of is simply an implementation of that policy;" (ii) "no rule has been announced as policy but federal law has been violated by an act of the policymaker itself;" and (iii) "the policymaker has failed to act affirmatively at all, [though] the need to take some action

to control the agents of the government is so obvious, and the inadequacy of existing practice so likely to result in the violation of constitutional rights, that the policymaker can reasonably be said to have been deliberately indifferent to the need." *Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 584 (3d Cir. 2003) (citations omitted).

Defendants argue that Plaintiffs cannot hold the Board liable for alleged retaliation under Section 1983 because they failed to plead "the existence of a policy or custom that resulted in a deprivation of constitutional rights." (D.E. No. 28-2 at 19). In opposition, Plaintiffs contend that the Board's liability is premised on two alleged "decisions" made by the Board and Munoz, in his capacity as Superintendent, regarding Plaintiffs' employment. (D.E. No. 32 at 26). The Court agrees with the Defendants because the Amended Complaint entirely fails to plead an affirmative action taken by either Munoz or the Board that could plausibly constitute an official policy or custom under *Monell*. (*See generally* Am. Compl.).

To plausibly plead *Monell* liability, a plaintiff must identify the challenged policy or custom, attribute it to the municipality itself, and establish a causal connection between the policy as executed and the injury suffered. *Harley v. City of Jersey City*, No. 16-5135, 2017 WL 2779466, at *8 (D.N.J. June 27, 2017); *see also Kranson v. Valley Crest Nursing Home*, 755 F.2d 46, 51 (3d Cir. 1985). To satisfy Federal Rule of Civil Procedure 8(a)(2) and survive a motion to dismiss, Plaintiffs need to "specify what exactly that custom or policy was." *McTernan v. City of York*, 564 F.3d 636, 658 (3d Cir. 2009). Municipal policy usually involves a "statement, ordinance, regulation, or decision officially adopted and promulgated by [a governing] body's officers." *Simmons v. City of Phila.*, 947 F.2d 1042, 1059 (3d Cir. 1991) (citing *Monell*, 436 U.S. at 690). A plaintiff may show a custom for *Monell* purposes through a given course of conduct, "although not specifically endorsed or authorized by law," that is so well-settled and permanent as to virtually

constitute law. *Bielevicz*, 915 F.2d at 850. In cases involving a single decision by a municipal body, liability attaches only where "a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question." *Langford v. City of Atl. City*, 235 F.3d 845, 848 (3d Cir. 2000) (quoting *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483 (1986)).

Here, Plaintiffs fail to allege any facts to establish the existence of a policy or custom that was the proximate cause of any alleged deprivation of their constitutional rights. The Amended Complaint merely alleges that the Board took no further action regarding Plaintiffs' future employment after conducting a *Donaldson* hearing.[8] (Am. Compl. ¶¶ 26–27). Nor have Plaintiffs alleged that the Board acted to officially adopt or ratify any policy to take no further action on employment decisions with respect to Diaz supporters, whether instituted by Munoz, Lora, or any another individual. (*See generally id.*). In addition, Plaintiffs do not allege that other employees who outwardly supported Diaz similarly received a recommendation for reappointment followed by non-renewal and the Board's inaction. *See Langford*, 235 F.3d at 846–50. Although Plaintiffs seemingly assert that Munoz made an affirmative decision not to renew Plaintiffs' employment contracts in their opposition (*see* D.E. No. 32 at 26), this inference—let alone this allegation—is entirely absent from the Amended Complaint. (*See generally* Am. Compl.). Nor do Plaintiffs claim that Munoz or another official somehow controlled or influenced the Board in any way. (*See generally id.*). As plead, the Board's response to Plaintiffs' non-renewal is characterized, at best, as an isolated occurrence specific to Plaintiffs. (*See generally id.*). Thus, the Amended Complaint fails to plead a viable *Monell* claim against the Board.

---

[8]     Notably, the Amended Complaint removes all prior allegations, albeit threadbare and conclusory, that the Board initiated and upheld a policy or custom that deprived Plaintiffs of their constitutional rights. (*Compare* D.E. No. 1 at ¶¶ 34–35 *with* Am. Compl.).

Accordingly, because Plaintiffs had ample opportunity to amend their pleading after a robust oral argument that highlighted numerous deficiencies with respect to the Board's alleged policy or custom (*see* Hearing Tr. at 53:7–57:18), their *Monell* claim against the Board is dismissed *with prejudice*. *See, e.g.*, *Brown v. Cantineri*, No. 14-6391, 2017 WL 481467, at \*2 (D.N.J. Feb. 6, 2017).

## C. State Claim

Because the Court dismisses all claims over which it has original jurisdiction, "it ha[s] the authority to decline to exercise supplemental jurisdiction" over the remaining state-law claim. *See Petrossian v. Cole*, 613 F. App'x 109, 112 (3d Cir. 2015); *see also Obuskovic v. Wood*, 761 F. App'x 144, 148–49 (3d Cir. 2019) ("A District Court has discretion to decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction." (quoting 28 U.S.C. § 1367(c)(3)) (internal quotation mark omitted)). Here, in its discretion, the Court will decline to exercise supplemental jurisdiction over Plaintiff's remaining state-law claim under the New Jersey Civil Rights Act (N.J. Stat. Ann. § 10:6-1). *See, e.g.*, *Mathis v. Phil. Elec. Co.*, 644 F. App'x 113, 116 (3d Cir. 2016). Thus, Count II of the Amended Complaint is dismissed *without prejudice*.

## IV. Conclusion

For the foregoing reasons, the Court GRANTS Defendants' motion to dismiss the Amended Complaint. As noted above, notwithstanding the fact that the Court spent significant time discussing with Plaintiffs the obvious deficiencies in the original complaint (*see generally* Hearing Tr.), and the Court placed Plaintiffs on notice that this would be their final bite at the proverbial apple (*see id.* at 21:6–8, 63:4–6 & 57:12–15), Plaintiff's Amended Complaint essentially ignored these pleading deficiencies. As such, the Court finds that further amendment

would not only be futile, but would needlessly waste scarce judicial resources and unfairly burden Defendants. *See, e.g.*, *Brown*, 2017 WL 481467, at *2 ("Because I have already given [Plaintiff] one opportunity to amend, this dismissal is with prejudice."); *accord Foster v. Raleigh*, 445 F. App'x 458, 460 (3d Cir. 2011); *Venditto v. Vivint, Inc.*, No. 14-4357, 2015 WL 926203, at *15 (D.N.J. Mar. 2, 2015); *Prudential Ins. Co. of Am. v. Bank of Am., Nat'l Ass'n*, No. 13-1586, 2015 WL 502039, at *7 (D.N.J. Feb. 5, 2015). Accordingly, Count I of the Amended Complaint is dismissed *with prejudice* and Count II is dismissed *without prejudice* on jurisdictional grounds.

An appropriate Order accompanies this Opinion.

*s/Esther Salas*
**Esther Salas, U.S.D.J.**